# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **AP ALTERNATIVES, LLC,** | **CASE NO. 5:18-CV-01748** |
| Plaintiff, | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **ROSENDIN ELECTRIC, INC., et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | |

Currently pending is Plaintiff AP Alternatives, LLC's (hereinafter "APA") Motion For Leave To File Second Amended Complaint And Memorandum In Support Thereof (hereinafter "Plaintiff's Motion)". (Doc. No. 33.) Defendants NextEra Energy Services Ohio, LLC, NextEra Energy Solutions, LLC and DG AMP Solar, LLC (collectively, the "NextEra Defendants") filed a Response in Opposition on December 18, 2018. (Doc. No. 36.) Defendant Rosendin Electric Inc. (hereinafter "Rosendin") filed a Response in Opposition on December 18, 2018. (Doc. No. 37.) APA filed a Reply Memorandum on December 26, 2018. (Doc. No. 38). For the reasons stated below, APA's Motion is GRANTED IN PART AND DENIED IN PART.

## I. Procedural History

On September 24, 2018, APA filed its First Amended Complaint (hereafter "FAC") alleging four causes of action. (Doc. No. 21.) In its first claim or cause of action titled "Action on Account" APA alleged that Rosendin owed APA on an account, a copy of which was attached as Exhibit "B" to the FAC; this claim or cause of action did not apply to the NextEra Defendants. (Doc. No. 21, p 4.) In its second claim or cause of action titled "Breach of Contract" APA alleged that Rosendin had breached a written contract entered into with APA, a copy of which "Long Form Agreement" was

attached as Exhibit "A" to the FAC; this claim or cause of action did not apply to the NextEra Defendants. (Doc. No. 21, p 5.) In its third claim or cause of action titled "Unjust Enrichment, in the Alternative" APA alleged that Rosendin had been unjustly enriched at the expense of and to the detriment of APA because APA completed work on a certain "Project"[1] for which it was not paid, but: 1.) Rosendin was paid; and 2.) the NextEra Defendants have a completed facility for which they have not paid. (Doc. No. 21, pgs. 5-6.) In its fourth and final claim or cause of action titled "Foreclosure of a Mechanic's Bond" APA alleged in relevant part that Rosendin posted a Mechanic's Bond in place of a Mechanic's Lien APA obtained, and APA and Rosendin approved the Bond and discharged the Lien. (Doc. No. 21, pgs. 7-8.) As to the NextEra Defendants, APA merely alleged that although **Defendant** NextEra timely filed the Notice of Commencement, they failed to provide APA with a copy of it, despite APA's request for it.[2] (Doc. No. 21, p. 7.)

On October 9, 2018, Rosendin filed a Motion to Dismiss Count Three of APA's FAC and Motion for Summary Judgment regarding Count Four of APA's FAC, and a Memorandum in Support thereof. (Doc. No. 24 and Attachment No. 1.) On October 9, 2018, the NextEra Defendants filed a Motion to Dismiss APA's FAC, and a Memorandum in Support thereof (Doc. Nos. 25, 26), arguing that APA's FAC failed to state a claim upon which relief could be granted regarding all counts set forth against them. On November 29, 2019, APA filed its Memorandum in Opposition to the NextEra Defendants' Motion to Dismiss (Doc. No. 31), and its Memorandum in Opposition to Rosendin's

---

[1] The "Project", as defined in paragraph 7 of, and referred to throughout the FAC, is "installing racking for solar panels at the 'Location'." The "Location" as used to identify the "Project" is defined in paragraph 6 of the FAC as 183 Allen Avenue, Orrville, Ohio 44667

[2] (Emphasis added by bold print.) There are two "NextEra" defendants: NextEra Energy Services Ohio, LLC; and NextEra Energy Solutions, LLC. It is unclear to the court which of these two defendants APA is referring to in paragraphs 47 and 48 of the FAC when it uses the singular term "Defendant". However, in paragraph 47, APA uses the term "they" in referring to "Defendant NextEra".

2

Motion to Dismiss Count Three and Motion for Summary Judgment as to Count Four (Doc. No. 32.) On December 13, 2018, the NextEra Defendants filed their Reply in support of their Motion to Dismiss, and Rosendin filed its Reply in support of its Motion to Dismiss Count Three and Motion for Summary Judgment on Count Four. (Doc. Nos. 34, 35.) Meanwhile, on December 4, 2018, APA moved for leave to file a second amended complaint. (Doc. No. 33.)

Attached as Exhibit "1" to APA's Motion is its proposed Second Amended Complaint (hereinafter, "SAC"). (Doc. No. 33-1.) The SAC names an additional defendant, Federal Insurance Company (hereinafter "Federal"), and only the seventh claim for relief or cause of action titled "Action on Mechanic's Bond", is directed to Federal, as surety on the Mechanic's Bond. Attached to the SAC as Exhibit "A" is the same contract attached as Exhibit A to the FAC, but in the SAC it is referred to as the "Subcontract". (Doc. No. 21, Ex. A; Doc. No. 33, Ex. A, at p. 3, ¶ 13.)

As to the NextEra Defendants, the SAC sets forth the following additional claims or causes of action against them:

1. the first claim for relief titled "Action on Account" which alleges that the NextEra Defendants agreed to purchase on account materials, labor, and/or equipment from APA for installation of solar panel racking for the "Project"[3] (Doc. No. 33-1, p. 5);[4]

---

[3] The SAC, at paragraph 8, describes the "Project" as "the Orrville 3 Solar" for which the NextEra Defendants entered into a joint venture and retained Rosendin as the general contractor", and at paragraph 9, further describes it as requiring installation of a racking system for solar panels. (Doc. 33-1, p. 2.)

[4] In their Memorandum in Support of their Motion to Dismiss (Doc. No. 26) the NextEra Defendants moved to dismiss the "First Claim: Action on Account" set forth in APA's FAC. However, that claim was not directed against the NextEra Defendants, but only Rosendin. And, since the NextEra Defendants did not address this claim in their Opposition to APA's Motion, the Court will not evaluate any potential argument that to allow this claim against the NextEra Defendants in the SAC would be futile. Any such argument can be raised by the NextEra Defendants in any motion to dismiss the SAC that they deem appropriate to file.

3

2. the second claim for relief titled "Reformation of Contract due to Mutual Mistake of Fact" which alleges that the NextEra Defendants (and Rosendin and APA) mistakenly relied upon the Geotech Report[5] regarding the subsurface conditions of the Project "Location"[6] in entering into the Subcontract and this mutual mistake requires reformation of the Subcontract to reflect the parties' intentions, i.e., APA's scope of work included all excavation necessary to perform the scope of work and APA would be paid the original amount of the Subcontract plus the cost of all materials, labor and/or equipment APA supplied to so perform (Doc. 33-1, pgs. 5-6);

3. the third claim for relief titled "Breach of Contract" which alleges that the NextEra Defendants, as intended third-party beneficiaries of the Subcontract entered into by and between APA and Rosendin, breached the Subcontract by failing to pay to APA the additional costs incurred by it in performing additional work to complete the Project and comply with the Subcontract (Doc. 33-1, p. 7);[7]

4. the fourth claim for relief titled "Breach of Contract – Cardinal Change", which alleges that the alterations or changes the NextEra Defendants made to the terms of the Subcontract

---

[5] The "Geotech Report" is described in the FAC as "a geotechnical report conducted by RRC Power & Energy, LLC ("RRC"), that was supplied to Plaintiff by Defendants", and which APA alleged disclosed only native soils and organic deposits with occasional gravel, and not the large debris and concrete APA alleges it found when it excavated the Location. (Doc. No. 21, p. 2, ¶¶ 9, 10, 15-17.) The "Geotech Report" is described in the SAC as it is in the FAC. (Doc. No. 31-1, p. 3, ¶¶ 10, 11, 15-16.)

[6] The SAC, like the FAC, defines or describes the "Location" as 183 Allen Avenue, Orrville, Ohio 44667. (Doc. 33-1, p. 2, ¶ 8.)

[7] In their Memorandum in Support of their Motion to Dismiss, the NextEra Defendants moved to dismiss the "Second Claim: Breach of Contract" set forth in APA's FAC. However, that claim was not directed against the NextEra Defendants, but only Rosendin. And, since the NextEra Defendants did not address this claim in their Opposition to APA's Motion, the Court will not evaluate any potential argument that to allow this claim against the NextEra Defendants in the SAC would be futile. Any such argument can be raised by the NextEra Defendants in any motion to dismiss the SAC that they deem appropriate to file.

4

constituted a "Cardinal Change" that breached the Subcontract, proximately resulting in damages to APA (Doc. 33-1, p. 8); and

5. the fifth claim for relief titled "Breach of Implied Warranty Against the NextEra Defendants—*Spearin* Doctrine", which alleges that the NextEra Defendants breached their implied duty to provide accurate information to APA regarding the subsurface conditions of the Location, proximately resulting in damages to APA (Doc. 33-1, pgs. 8-9).

Unlike the FAC, the SAC does not include any allegations against, or mention of, the NextEra Defendants associated with the "Action on Mechanic's Bond."[8] Like the FAC, the SAC does include a claim or cause of action against the NextEra Defendants for unjust enrichment.[9] (Doc. 33-1, p. 10.)

As to Rosendin, the SAC sets forth the following additional claims or causes of action against it:

- the second claim for relief titled "Reformation of Contract due to Mutual Mistake of Fact" which alleges that Rosendin (and the NextEra Defendants and APA) mistakenly relied upon the Geotech Report regarding the subsurface conditions of the Project "Location" in entering into the Subcontract and this mutual mistake requires reformation of the Subcontract to reflect the parties' intentions, i.e., APA's scope of work included all excavation necessary to perform the scope of work and APA would be paid the original

---

[8] Compare the Fourth Claim: Foreclosure of a Mechanic's Bond set forth at pages 6-8 of the FAC (Doc. No. 21) with the Seventh Claim for Relief (Action on Mechanic's Bond) set forth at pages 11-12 of the SAC (Doc. No. 33-1).

[9] In their Memorandum in Support of their Motion to Dismiss, the NextEra Defendants moved to dismiss the "Third Claim: Unjust Enrichment, In the Alternative" set forth in APA's FAC. However, in their Opposition to APA's Motion, they did not argue that allowance of this claim against them would be futile. Therefore, the Court is not going to consider this argument in the context of evaluating and deciding APA's Motion. Any such argument can be raised by the NextEra Defendants in any motion to dismiss the SAC that they deem appropriate to file.

- amount of the Subcontract plus the cost of all materials, labor and/or equipment APA supplied to so perform (Doc. 31-1, pgs. 5-6); and

- the fourth claim for relief titled "Breach of Contract – Cardinal Change", which alleges that the alterations or changes Rosendin made to the terms of the Subcontract constituted a "Cardinal Change" that breached the Subcontract, proximately resulting in damages to APA (Doc. 33-1, p. 8).

Like the FAC, the SAC includes claims for relief or causes of action against Rosendin for: "Action on Account" (First Claim for Relief); "Breach of Contract" (Third Claim for Relief); and "Unjust Enrichment" (Sixth Claim for Relief). (Doc. Nos. 33-1 and 21.)

## II. Arguments of the Parties and Decisions of the Court relative to them.

In support of its Motion for Leave to file its proposed SAC, APA argues that the additional claims for relief against the original defendants, the NextEra Defendants and Rosendin set forth in the SAC arise out of the same essential facts. APA notes that the same causes of action that were set forth in the original complaint were included in the FAC, and the FAC included only one additional cause of action "against Rosendin for foreclosure of a mechanic's lien."[10] APA submits that the SAC adds as a new defendant, Federal, "to assert a claim on the Mechanic's Bond it executed, as permitted by R.C. § 1311,11(C)(3)." (Doc. No. 33, p. 4.)

APA submits, and the NextEra Defendants and Rosendin agree, that "Fed. R. Civ. P. 15(a) provides that leave to amend shall be freely given when justice so requires." *Zecotek Imaging Systems Pte Ltd. V. Saint-Gobain Ceramics & Plastics, Inc.*, No. 5:12 CV 1533, 2014 WL 12597840, *1 (N.D.

---

[10] APA, then, concedes what the NextEra Defendants asserted in their Memorandum in Support of their Motion to Dismiss, i.e., that "APA's cause of action for Foreclosure of a Mechanics' Bond appears directed at R[osendin]." (Doc. No. 25-1, p. 11.)

6

Ohio, Dec. 2, 2014). (Doc. No. 33, p. 4; Doc. No. 36, p. 2; Doc. No. 37, p. 2.) The parties also agree that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules required, be 'freely given.'" *Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 2d 222 (1962). (Doc. No. 33, p. 4; Doc. No. 36, p. 2; Doc. No. 37, p. 2.)

### A. Undue Delay and Prejudice

APA argues that the granting of its Motion will not result in undue delay because this case remains in the early stages of litigation, with no initial disclosures having been exchanged or discovery having been conducted, or a Case Management Order having been issued. APA argues that the parties will not be prejudiced because the new claims against the NextEra Defendants and Rosendin in the SAC arise out of the same nucleus of operative facts as those set forth in the FAC, and as the entity that issued the Mechanic's Bond to Rosendin, Federal knew or should have known that a claim would be brought against it. The NextEra Defendants and Rosendin do not disagree with the assertions made in support of APA's arguments, but contend that, given the filing of its FAC, the proposed amendments in APA's SAC evidence a "repeated failure to cure prior deficiencies" requiring them to continually respond to what they consider futile claims, that should not be permitted.

The Court agrees with APA that the granting of its Motion will not result in undue delay. Moreover, any prejudice suffered by the defendants in responding to APA's Motion has already occurred, and the responses incorporate by reference many of the arguments already made by the

7

NextEra Defendants and Rosendin in their respective motion to dismiss and partial motion to dismiss/summary judgment relative to the FAC. However, another basis for denying, in part, APA's Motion – futility of amendment, applies, as more fully explained below.

**B.     Futility of Amendments**

This court may assess the legal sufficiency of the contemplated amendment in considering the propriety of granting leave to amend under Fed. R. Civ. P. 15(a) and deny the motion if the amendment would be futile. 6 Wright and Miller, *Federal Practice and Procedure* § 1487 at 432-433 (1977). *Kindle Bldg. Co. v. Ford Motor Co.*, 17 F. Supp. 2d 701, 705 (N.D. Ohio 1997). This court must view APA's SAC in a light most favorable to APA and accept the well-pled facts as true but need not accept legal conclusions or unwarranted factual inferences as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

**1.     Reformation based upon Mutual Mistake as to the NextEra Defendants and Rosendin**

APA's second claim for relief against the NextEra Defendants and Rosendin seeks reformation of the Subcontract due to a Mutual Mistake of fact. The NextEra Defendants and Rosendin argue that under Ohio law, only a scrivener's error warrants a reformation of a contract. However, APA's citation to and reliance upon the Ohio Eighth District Court of Appeals' decision in *City Life Dev., Inc. c. Praxus Group, Inc.,* No. 88221, 2007 WL 1290169 (Ohio Ct. App. 8th Dist., May3, 2007), negates this argument. Thus, it would not be futile to allow APA to include this claim for relief or cause of action against the NextEra Defendants and Rosendin in its SAC based upon this argument alone.

In addition to their argument that only a scrivener's error warrants reformation of a contract under Ohio law, the NextEra Defendants "direct this court's attention to Doc. 25 at pages 7-8 and

8

Doc. 34 at pages 3-5 for their argument as to why they are not in privity of contract with APA and why they have no liability under the third-party beneficiary theory APA asserts." (Doc. No. 36, p. 5.) However, this Court disfavors incorporating by reference arguments made in separate pleadings, particularly when those separate pleadings, in this case a Motion to Dismiss the FAC and Memorandum and Reply in support thereof, will become moot when APA is granted leave, in part, to file a second amended complaint, and does so. Therefore, this Court will not consider those separate arguments at this time, but the NextEra Defendants can incorporate them in any motion to dismiss they deem appropriate to file in response to the filing of the second amended complaint.

In addition to its argument that only a scrivener's error warrants reformation of a contract under Ohio law, Rosendin cites to paragraphs 30,[11] 32,[12] 35[13] and 37[14] of the SAC to assert that APA has failed to plead the claim for reformation with particularity, and quotes two provisions of the Subcontract[15] to argue that the allegations APA makes in those paragraphs are contrary to the

---

[11] In paragraph 30 of the SAC, APA alleges that "[i]n evaluating the cost of the Project, APA, Rosendin, and the NextEra Defendants all relied upon the information contained in the Geotech Report regarding the subsurface conditions of the location." (Doc. No. 33-1, p. 6.)

[12] In paragraph 32 of the SAC, APA alleges that "[r]elying on the Geotech Report, APA and Rosendin entered into the Subcontract for the installation of solar panel racking at the Location." (Doc. No. 33-1, p. 6.)

[13] In paragraph 35 of the SAC, APA alleges that "[t]he subsurface conditions of the Location were a basic assumption upon which the Subcontract was made, and the parties' mutual mistake had a material effect on the agreed exchange of performances." (Doc. No. 33-1, p. 6.)

[14] In paragraph 37 of the SAC, APA alleges that "[t]he mutual mistake of the parties goes to the essential basis of the bargain of the Subcontract and warrants reformation of the Subcontract to reflect the actual intent of the parties, namely that (i) APA's scope of work under the Subcontract included not only installation of the solar panel racking system as set forth in Section 2 of the Subcontract, but also all excavation necessary to perform the scope of work as requested by Rosendin, and (ii) APA would be paid the original amount of the Subcontract plus the cost of all materials, labor, and/or equipment APA supplied to do so." (Doc. No. 33-1, p. 6.)

[15] The two provisions of the Subcontract, quoted at p. 6 of Rosendin's Response in Opposition to APA's Motion (Doc. No. 37), read as follows: 1.) "[t]his Agreement shall represent the entire agreement between Contractor and Subcontractor with respect to the Project and supersede any prior written or oral representations with respect thereto"; and 2.) "[i]n addition to the representations and certifications contained in the Contract Documents,[] Subcontractor certifies that it is fully familiar with all of the terms of the Contract Documents, the location of the job site, and the conditions under which the work is to be performed and that it enters into this Agreement based upon its investigation of all such matters and is not relying on any opinions or representations of Contractor."

9

Subcontract, and therefore, "APA's proposed SAC pleads 'facts' that are contradicted by the exhibits thereto without any explanation as to how to reconcile the conflict." The court's response is twofold. First, had the issue or argument arisen in the context of a motion to dismiss by Rosendin, then APA would have had an opportunity to provide an explanation as to how to reconcile the conflict. Second, this court's reading of the case cited and relied upon by APA, *City-Life Development v. Praxus Group, Inc.*, specifically ¶¶ 33-35, demonstrates that such an explanation exists.

Accordingly, for the purpose of deciding APA's Motion, the court cannot say at this time whether the claim for relief or cause of action for reformation of the Subcontract based upon mutual mistake would be futile.

### 2. Breach of Contract for a Cardinal Change as to the NextEra Defendants and Rosendin

APA's fourth claim for relief in the SAC seeks redress from the NextEra Defendants and Rosendin for breach of contract based upon the doctrine of cardinal change, i.e., a doctrine that "provides an extracontractual remedy to a contractor where changes ordered by the owner are so significant that they cannot be said to fall within the 'changes clause' contained in the contract." *Ebensiterie Beaubois Ltee v. Marous Bros. Const., Inc.*, Case No. 02 CV 985, 2002 WL 32818011, *3 (N.D. Ohio, Oct. 17, 2002). Properly citing and relying upon *Ebensiterie*, both the NextEra Defendants and Rosendin argue that Ohio law does not recognize this doctrine, and the NextEra Defendants also argue that they cannot be held liable under this doctrine because there is no contractual relationship between them and APA.

While conceding that no Ohio court has expressly adopted the cardinal change doctrine by name, APA contends that two appellate districts have, in effect, applied the principles underlying the doctrine in cases involving facts like those alleged in its SAC. The first case APA cites in support of

10

this contention is *Oberer Construction Co. v. Park Plaza, Inc.*, 179 N.E.2d 168, 170 (Ohio Com.Pl.Ct. 1961).[16] Indeed, APA asserts that "[n]otwithstanding [*Oberer*], in *Ebenisterie*, 2002 WL 32818011 at *4 (N.D. Ohio, Oct. 17, 2002), the District Court stated that '[n]o Ohio Court has addressed whether Ohio recognizes the 'cardinal change' breach of contract claim,' and found that 'the Ohio Supreme Court would decline to adopt the cardinal change doctrine as a rule of law in Ohio.'" (Doc. No.38, p. 9.) APA then contends that based in part on *Oberer*, *Ebenisterie* was wrongly decided and therefore, this Court should revisit this issue. (Doc. 38, p. 9.)

In *Ebenisterie*, the District Court considered *Oberer* but rejected its relevance to the issue of cardinal change breach of contract, explaining in relevant part as follows:

> This Court respectfully disagrees with any reliance placed on *Oberer* [by the Eastern District of Kentucky in *L.K. Comstock & Co., Inc. v. Becon Construction Co.*, 932 F.Supp. 906 (E.D.Ky.1993)] for the proposition that Ohio recognizes a cardinal change breach of contract claim. In a typical 'cardinal change' case, the contract contains a changes clause and a remedy provision, which specifically address the rights and responsibilities of the parties with respect to changes to specifications implemented by the owner. In *Oberer*, the contract did not contain such a provision. Instead, the contract specifically identified the scope of the contractor's work. During the course of performance, the owner unilaterally changed the requirements and imposed a significant change on the contractor. The court found that changes to specifications 'otherwise than the contract permits' may result in a breach of contract sufficient to justify a repudiation of the contract. The contract did not contain an express term allowing changes to be made to the specifications. *Oberer* does not stand for the proposition that where an express contractual provision exists contemplating changes to specifications, a party nonetheless may breach the contract if the changes are substantial, thus allowing the non-breaching party to seek extracontractual remedies. Accordingly, the Court does not find *Oberer* relevant to the issue of cardinal change breach of contract.

---

[16] Thus, the first case APA cites for the proposition that two "appellate districts" have applied the principles of the cardinal change doctrine to facts similar to those at issue herein, is a common pleas court case and not a court of appeals case.

11

For the reasons already expressed by the District Court in *Ebenisterie*, this Court also finds that *Oberer* is not relevant to the issue of cardinal breach of contract and does not support APA's contention that *Ebenisterie* was wrongly decided and the issue should be revisited by this Court.

The one Ohio appellate court decision that APA relies upon in urging this Court to revisit the issue, is *Tony Zumbo & Son Const. Co. v. Ohio Dept. of Transp.*, 22 Ohio App.3d 141, 490 N.E.2d 621, 623 (Ohio Ct. App. 1984). However, *Tony Zumbo* is distinguishable from the instant matter. In that case, the plaintiff/appellee had entered into a contract with the defendant/appellant to complete the grading, draining, widening and resurfacing of a portion of a roadway. The contract expressly provided that upon the defendant's Director being notified of the Contractor's encountering of subsurface or latent physical conditions at the site differing materially from those indicated in the contract, or unknown physical conditions at the site differing materially from those ordinarily encountered, the Director would investigate and if the conditions were found to materially differ and cause an increase or decrease in the cost, an equitable adjustment would be made. In that case, the appellate court found that the trial court had not erred in concluding that payment for work necessitated by the unforeseen conditions was not equitable "within the contemplation of the contract." *Tony Zumbo*, 22 Ohio App.3d 141, 490 N.E.2d at 626. In other words, the language of the contract, requiring an equitable adjustment, controlled, and the appellate court found that the trial court had based its decision that the payment made by the defendant/appellant to the plaintiff/appellee was not equitable upon competent, credible evidence. Indeed, as in *Ebenisterie*, and unlike *Oberer*, the contract at issue in *Tony Zumbo* contained express terms for allowing changes to be made to the work. So, too, does the Subcontract at issue herein. (Doc. No. 21-1, p. 3.)

Accordingly, it would be futile to allow APA to include this claim for relief or cause of action against the NextEra Defendants and Rosendin in its SAC.

### 3. Breach of Implied Warranty (*Spearin* Doctrine) as to the Next Era Defendants

APA's fifth claim for relief seeks redress against the NextEra Defendants under a breach of implied warranty theory of recovery established by the United States Supreme Court in *U.S. v. Spearin*, 248 U.S. 132, 136, 39 S. Ct. 59 (1918) (when a contractor is "bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications") (hereinafter "the *Spearin* Doctrine"). The NextEra Defendants' argument that it would be futile to allow APA to amend the complaint again to assert this claim is threefold: 1.) the NextEra Defendants did not have a contract with APA; 2.) they cannot be liable under a third-party beneficiary theory; and 3.) any alleged contract between APA and the NextEra Defendants was not a government contract and therefore, the *Spearin* Doctrine does not apply to impose liability upon them. The third argument is dispositive of the issue.

In *Dugan v. Meyers Constr. Co., Inc. v. Ohio Dept. of Adm. Servs,*, 113 Ohio St.3d 226, 2007-Ohio-1687, 864 N.E.2d 68 (2007), the Ohio Supreme Court did recognize the *Spearin* Doctrine, stating that the "*Spearin* doctrine holds that, in cases involving government contracts, the government impliedly warrants that accuracy of its affirmative indications regarding job site conditions." *Id.* at 73, quoting *Sherman R. Smoot Co. of Ohio v. Ohio Department of Administrative Services*, 136 Ohio App.3d 166, 736 N.E.2d 69 (Ohio Ct.App.2000). However, neither the Ohio Supreme Court or any other Ohio court has extended the *Spearin* Doctrine to contracts between private parties. *Thomas & Marker Const. Co. v. Wal-Mart Stores, Inc.*, No. 3:06-cv-406, 2008 WL 4279860, *19 (S.D. Ohio Sept. 15, 2008). Consistent with the decision by the district court in *Thomas & Marker Const. v.*

13

*Wal-Mart Stores, Inc.*, *id.*, this court finds no basis for extending the *Spearin* Doctrine to include cases involving private entities and elects to not do so.

As the NextEra Defendants correctly point out, in the SAC, although APA alleges a contract between the NextEra Defendants and APA, it does not allege that the contract is a government contract. Indeed, any alleged contract is between private entities. Accordingly, it would be futile to allow APA to include this claim for relief or cause of action against the NextEra Defendants in its SAC.

    **4.**    **Claim for Relief on Mechanic's Bond as to Federal**

The seventh claim for relief on the Mechanic's Bond set forth in APA's SAC is directed against Federal only, which is not yet a party to this lawsuit; it is not directed against Rosendin. (Doc. 33-1, p. 12, ¶74.) Yet, Rosendin asserts that granting APA's Motion to allow this claim would be futile, arguing that it is time-barred. However, as APA correctly points out, Rosendin does not have standing to make this argument. *See Commodities Export Co. v. City of Detroit*, No. 09-cv-11060-DT, 2011 WL 1042278, fn.2 (E.D. Mich. Mar. 28, 2011).

For the reasons set forth above, APA's Motion is GRANTED IN PART and DENIED IN PART. APA is granted leave to file a Second Amended Complaint, but that Second Amended Complaint may not include claims for Breach of Contract – Cardinal Change, or Breach of Implied Warranty Against the NextEra Defendants—*Spearin* Doctrine.

APA is ordered to file its second amended complaint consistent with this Order by August 20, 2019.

**IT IS SO ORDERED.**

                                               *s/Pamela A. Barker*
                                               PAMELA A. BARKER
Date: August 16, 2019                 U. S. DISTRICT JUDGE