**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **AP ALTERNATIVES, LLC,** | **CASE NO. 5:18-CV-01748** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **ROSENDIN ELECTRIC, INC., et al.,** | |
| **Defendants.** | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon the Partial Motion to Dismiss the Second and Fourth Claims for Relief in Plaintiff AP Alternatives, LLC's Second Amended Complaint ("Partial Motion to Dismiss") of Defendant Rosendin Electric, Inc. ("Rosendin").  (Doc. No. 47.)  Plaintiff AP Alternatives, LLC ("APA") filed a brief in opposition to Rosendin's Partial Motion to Dismiss on October 3, 2019, to which Rosendin replied on October 24, 2019.  (Doc. Nos. 53, 57.)

Also, currently pending is the Motion to Dismiss Plaintiff AP Alternatives, LLC's Second Amended Complaint ("Motion to Dismiss") of Defendants NextEra Energy Services Ohio, LLC, NextEra Energy Solutions, LLC, and DG AMP Solar, LLC (collectively, the "NextEra Defendants").  (Doc. No. 49.)  APA filed a brief in opposition to the NextEra Defendants' Motion to Dismiss on October 3, 2019, to which the NextEra Defendants replied on October 25, 2019.  (Doc. Nos. 54, 58.)

For the following reasons, Rosendin's Partial Motion to Dismiss (Doc. No. 47) is GRANTED, and the NextEra Defendants' Motion to Dismiss (Doc. No. 49) is GRANTED.

I.  **Background**

   a.  **Factual Background**

The NextEra Defendants entered into a joint venture to construct a solar energy facility in Orrville, Ohio referred to as the Orrville 3 Solar project (the "Project"). (Doc. No. 45 at ¶ 8.)[1] The NextEra Defendants retained Rosendin as the general contractor for the Project. (*Id.*) The Project required construction of a racking system on which solar panels would be installed, and Rosendin solicited APA to install the racking system. (*Id.* at ¶ 9.)

In submitting a bid and estimating costs, APA relied on information from a geotechnical report conducted by RRC Power & Energy, LLC (the "Geotech Report"), which was supplied to APA by Rosendin and the NextEra Defendants. (*Id.* at ¶ 10.) Regarding subsurface conditions, the Geotech Report disclosed only native soils and organic deposits with occasional gravel. (*Id.* at ¶ 11.) In reliance on the Geotech Report, APA conducted preliminary anchor testing to determine the appropriate products and installation method, and this testing appeared to confirm the subsurface conditions mentioned in the Geotech Report. (*Id.* at ¶ 12.)

On or about September 6, 2017, APA and Rosendin entered into a Subcontract Agreement ("Subcontract") for the installation of the solar panel racking system for the Project. (*Id.* at ¶ 13.) The Subcontract includes the following provision:

> **SECTION 1 – ENTIRE AGREEMENT AND CONTRACT DOCUMENTS.**
> Contractor has entered into a prime contract (the "Prime Contract") with Nextera Energy Resources (Owner) for the project known as **Orrville 3 Solar** (the "Project") and located at **183 Allen Avenue, Orrville OH, 44667**. The Construction Lender (if applicable) for the Project is: N/A. This Agreement shall represent the entire agreement between Contractor and Subcontractor with respect to the Project and supersede any prior written or oral representations with respect thereto. *As used*

---

[1] Allegations contained in APA's Second Amended Complaint ("SAC") are assumed to be true for purposes of ruling on the pending Motions to Dismiss only.

2

> *herein, "Contract Documents" means the Prime Contract for the Project, and all plans, specifications and other contract documents attached to, referenced in or incorporated into the Prime Contract. The Contract Documents shall be deemed incorporated in this Agreement by reference, and Subcontractor, its subcontractors, suppliers and/or materialmen will be and are bound by the Contract Documents insofar as they relate in any way, directly or indirectly, to the work covered by this Agreement.* Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to the Owner under the Contract Documents, including, but not limited to, all applicable terms and provisions thereof. *Where in the Contract Documents, reference is made to Contractor, and the terms and provisions thereof pertain to Subcontractor's trade, or type of work, such terms or provisions shall be interpreted to apply to Subcontractor instead of to Contractor. To the extent that the Contract Documents contain provisions that are greater or more stringent than those set forth in this Agreement, Subcontractor shall be required to comply with the terms and provisions of the Contract Documents.*

(Doc. No. 45-1 at 1 (bolding in original; italics added for emphasis).)

The Prime Contract as defined, used, and incorporated by reference into the Subcontract, provides, in relevant part, as follows:

> **16.1.11 Studies and Reports.** Owner may provide or may have provided it with copies of certain studies, reports or other information (including oral statements) and it represents and acknowledges that, except to the extent any of the following matters is depicted or specified in the Owner-Furnished Drawings, with respect to which Contractor has relied on the accuracy of the depiction or specification contained in the Owner-Furnished Drawings: (i) all such documents or information have been or will be provided as background information and as an accommodation to Contractor, *(ii) Owner makes no representations or warranties with respect to the accuracy of such documents or the information (including oral statements) or opinions therein contained or expressed and (iii) it is not relying on Owner for any information, data, inferences, conclusions, or other information with respect to the Project Site, including the surface or subsurface conditions of the Project Site and the surrounding areas.*

(Doc. No. 47-3 at 56 (bolding in original; italics added for emphasis).)[2]

---

[2] APA asserts that the Court may not consider the Prime Contract at the motion to dismiss stage because APA neither attached it as an exhibit to the SAC nor incorporated it by reference into the SAC. (Doc. No. 53 at 6 n.3.) However, "[i]n ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) *documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference*; (3) public records; and (4) matters of which the

3

On or about November 2, 2017, APA began drilling anchor holes at the Project location for installation of the racking system. (Doc. No. 45 at ¶ 15.) During drilling, APA discovered that the true subsurface conditions were substantially different than those disclosed in the Geotech Report and understood by the parties at the time they entered into the Subcontract. (*Id.*) Specifically, Rosendin discovered large debris, such as rubber tires, manhole covers, clothes, water heaters, refrigerators, concrete, asphalt, bricks, large stone, metal pipes, and whole vehicle parts. (*Id.* at ¶ 16.) After APA notified Rosendin and the NextEra Defendants about the subsurface conditions, they instructed APA to excavate, sift through, and remove the large debris and concrete found and threatened the imposition of penalties if timelines were not met. (*Id.* at ¶¶ 17-20.) Under protest, APA incurred additional costs for labor, material, and equipment required to perform the additional work. (*Id.* at ¶ 18.) APA also submitted a change order to reflect the necessary cost to properly complete the Project within Rosendin and the NextEra Defendants' timeline, but it was improperly disapproved, and APA remains unpaid for the additional work. (*Id.* at ¶ 21.)

On or about March 1, 2018, APA recorded a mechanics' lien for payment in the Wayne County Recorder's Office. (*Id.* at ¶ 22; Doc. No. 45-2.) Subsequently, Rosendin obtained a bond in lieu of lien in the amount of $1,443,965.84, which is held by the Clerk of Court of Common Pleas in Wayne County, Ohio. (Doc. No. 45 at ¶ 23; Doc. No. 45-3.) On or about April 26, 2018, the Wayne County Court of Common Pleas entered an order regarding a stipulated entry by Rosendin and APA,

---

court may take judicial notice." *Flex Homes, Inc. v. Ritz-Craft Corp. of Michigan, Inc.*, 721 F. Supp. 2d 663, 669 (N.D. Ohio 2010) (emphasis added). Consideration of such documents attached to a motion to dismiss "acts as a protection for the defendant, without which 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.'" *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 898 (S.D. Ohio 2013) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). Here, the Prime Contract is specifically incorporated into and part of the Subcontract, which is referenced in the SAC and central to APA's claims. Accordingly, the Court may consider the Prime Contract.

4

wherein the court approved Rosendin's bond and discharged APA's mechanics' lien. (Doc. No. 45 at ¶ 24; Doc. No. 45-4.)

### b. Procedural History

On June 26, 2018, APA filed suit against Rosendin and the NextEra Defendants in the Court of Common Pleas of Wayne County, Ohio, setting forth claims for action on account, breach of contract, and unjust enrichment. (Doc. No. 1-1.) About a month later, the NextEra Defendants removed the case to this Court based on diversity of citizenship. (Doc. No. 1.)

Rosendin and the NextEra Defendants then filed motions to dismiss, seeking to dismiss the claims set forth in APA's Complaint for failure to state a claim. (Doc. Nos. 7, 8.) In response, APA filed a First Amended Complaint ("FAC"), and the parties withdrew their pending motions to dismiss. (Doc. Nos. 21, 27, 28.) Simultaneous with the withdrawal of their earlier motions to dismiss, Rosendin filed a partial motion to dismiss and for summary judgment, seeking to dismiss two of the claims set forth in the FAC, and the NextEra Defendants filed another motion to dismiss all claims. (Doc. Nos. 24, 25.) APA opposed both motions, and, shortly thereafter, requested leave to file a second amended complaint. (Doc. Nos. 31-33.) The Court granted APA's Motion for Leave to File a Second Amended Complaint in part, and, in a non-document order, denied Rosendin's and the NextEra Defendants' pending motions as moot. (Doc. No. 44.)

Subsequently, on August 20, 2019, APA filed its Second Amended Complaint ("SAC"), setting forth claims against Rosendin, the NextEra Defendants, and Federal Insurance Company. (Doc. No. 45.) With respect to Rosendin and the NextEra Defendants, APA now brings claims for (1) action on account, (2) reformation of contract due to mutual mistake of fact, (3) breach of contract, and (4) unjust enrichment. (*Id.* at ¶¶ 26-50.) On September 3, 2019, Rosendin filed a Partial Motion

to Dismiss, seeking to dismiss APA's second and fourth claims for relief in the SAC for reformation of contract due to mutual mistake of fact and unjust enrichment for failure to state a claim under Rule 12(b)(6). (Doc. No. 47.) The same day, the NextEra Defendants filed a Motion to Dismiss all claims set forth against them in the SAC for failure to state a claim. (Doc. No. 49.) Both Motions have been fully briefed and are ripe for consideration.

## II. Standard of Review

Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Rosendin's Partial Motion to Dismiss

#### a. Reformation of Contract Due to Mutual Mistake of Fact

In Count Two of the SAC, APA asserts that it is entitled to a judgment reforming the Subcontract based on the parties' mutual mistake regarding the subsurface conditions at the Project location. (Doc. No. 45 at ¶¶ 29-38.) Rosendin argues that dismissal of this claim is warranted because APA assumed the risk of a mistake with respect to the subsurface conditions. (Doc. No. 47-2 at 6-10.) The Court agrees.

Under Ohio law, "[a] mutual mistake is a mistake by both parties at the time the contract was made as to a basic assumption on which the contract was made, which has a material effect on the agreed exchange of performances." *Weber v. Budzar Indus., Inc.*, No. 2004–L–098, 2005 WL 2416585, at *6 (Ohio Ct. App. 11th Dist. Sept. 30, 2005). "The doctrine of mutual mistake permits rescission of a contract when the parties' agreement is based upon a mutual mistake of either law or fact." *Id.* In addition, "[r]eformation of a contract based on mutual mistake is proper when the parties

7

made the same mistake and understood the contract as the party seeking reformation alleges." *Music v. Sash & Storm, Inc.*, No. 1–01–142, 2002 WL 468582, at *2 (Ohio Ct. App. 3d Dist. Mar. 28, 2002).

"When mutual mistake exists, the contract is voidable by the adversely affected party, unless that party bears the risk of the mistake." *Richmond v. Evans*, No. 101269, 2015 WL 1120967, at *7 (Ohio Ct. App. 8th Dist. Mar. 12, 2015). "A party bears the risk of a mistake when: (1) the risk is allocated to the party by agreement of the parties; (2) the party is aware, at the time the contract is made, that he or she has only limited knowledge with respect to the facts to which the mistake relates but treats his or her limited knowledge as sufficient; or (3) the risk is allocated to the party by the court on the ground that it is reasonable in the circumstances to do so." *Id.*

To illustrate, with respect to allocation of the risk of a mistake by agreement, in *FirstMerit Bank, N.A. v. Vision Fin. Grp., Inc.*, the assignee of a lease sought to rescind the assignment due to a mutual mistake of fact because the equipment that was the subject of the assigned lease did not exist. No. 04-1497, 2006 WL 2806566, at *1 (W.D. Pa. Sept. 28, 2006). The parties' assignment agreement contained the following provision: "*With respect to the Equipment*, ASSIGNOR MAKES NO[] REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, *AS TO ANY MATTER WHATSOEVER CONCERNING THE EQUIPMENT*, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF TITLE, SELECTION, QUALITY, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE OR FREEDOM FROM CLAIMS OF COPYRIGHT OR PATENT INFRINGEMENT OR THE LIKE." *Id.* at *3. Applying Ohio law, the court found that the agreement allocated the risk that the equipment did not exist to the assignee because the parties had agreed without exception that the assignor did not make any representations or warranties about the equipment. *Id.* at *7-8; *see also Richmond*, 2015 WL 1120967, at *8 (holding agreement allocated

8

risk of mistake relating to financial consequences of property settlement because it included language to the effect that both parties had exchanged extensive discovery, were satisfied with the discovery, and had consulted counsel).

Similarly, in this case, the Prime Contract, which is incorporated into the Subcontract, specifically informed APA that it could not rely on Rosendin for any information regarding the subsurface conditions of the Project site and that Rosendin made no representations as to the accuracy of the Geotech Report. When read as incorporated into the Subcontract, the Prime Contract provides, in relevant part, that: (1) "[Rosendin] makes no representations or warranties with respect to the accuracy of such documents [including the Geotech Report] or in the information (including oral statements) or opinions therein contained or expressed;" and (2) "[APA] is not relying on [Rosendin] for any information, data, inferences, conclusions, or other information with respect to the Project Site, including the surface or subsurface conditions of the Project Site and the surrounding areas." (Doc. No. 47-3 at 56.) Accordingly, the Subcontract allocated the risk of a mistake with respect to the subsurface conditions of the Project location, including a mistake in the Geotech Report, to APA. As a result, APA has failed to state a claim for reformation of the Subcontract due to a mutual mistake of fact.

Moreover, as noted above, a party bears the risk of a mutual mistake when "the party is aware, at the time the contract is made, that he or she has only limited knowledge with respect to the facts to which the mistake relates but treats his or her limited knowledge as sufficient." *Richmond*, 2015 WL 1120967, at *7; *accord Cydrus v. Houser*, No. 98CA2425, 1999 WL 1125061, at *4 (Ohio Ct. App. 4th Dist. Nov. 29, 1999) (affirming lower court's decision to "allocate[] the risk to the appellant" because "appellant had been informed by an expert in Parker shotguns that he should be suspicious

9

about the class of shotgun he was purchasing" but "[r]ather than investigating the shotgun further, appellant purchased the firearm that day"); *J.A. Indus., Inc. v. All Am. Plastics, Inc.*, No. 12–98–11, 726 N.E.2d 1066, 1072 (Ohio Ct. App. 3d Dist. 1999) ("[A]ppellant's failure to take reasonable steps to confirm the validity of Howard's alleged representations precludes recovery for fraudulent inducement, negligent misrepresentation, and also for mutual mistake.").

Here, based on the Subcontract, APA knew that it could not rely on the Geotech Report or any representations from Rosendin as to the subsurface conditions at the Project location. However, APA did not conduct its own complete testing of the subsurface conditions. Rather, according to its own allegations, APA only "conducted preliminary anchor testing to determine the appropriate products and installation method," which "appeared to confirm the subsurface conditions mentioned in the Geotech Report." (Doc. No. 45 at ¶ 12.) APA treated this limited knowledge of the subsurface condition as sufficient when entering into the Subcontract, and, therefore, bore the risk of a mistake in that regard. This provides an additional basis on which to dismiss APA's reformation claim.

Accordingly, the Court grants Rosendin's Partial Motion to Dismiss with respect to APA's claim for reformation of contract due to mutual mistake of fact.

### b. Unjust Enrichment

In Count Four of the SAC, APA brings a claim for unjust enrichment against Rosendin based on APA's provision of labor, materials, and equipment for the Project for which Rosendin has not paid. (Doc. No. 45 at ¶¶ 46-50.) Rosendin contends that APA's unjust enrichment claim should be dismissed because an express contract exists that governs the subject matter at issue. (Doc. No. 47-2 at 10-12.) In response, APA asserts that it may plead its breach of contract and unjust enrichment claims in the alternative at this stage, and that its unjust enrichment claim encompasses additional

work performed outside the scope of work of the contract. (Doc. No. 53 at 9-12.) The Court finds that APA's unjust enrichment claim should be dismissed, as Rosendin does not dispute the existence of the Subcontract and the Subcontract governs the additional work included in APA's unjust enrichment claim.

A claim for unjust enrichment "arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984) (quoting *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938)). To establish a claim for unjust enrichment, a party "must demonstrate that (1) he conferred a benefit upon a defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *RG Long & Assocs., Inc. v. Kiley*, No. CA2014–10–129, 2015 WL 3824365, at *2 (Ohio Ct. App. 12th Dist. June 22, 2015).

"However, in the absence of fraud or bad faith, Ohio law prohibits recovery under a theory of unjust enrichment where an express contract covers the same subject." *R.J. Wildner Contracting Co., Inc. v. Ohio Turnpike Comm'n*, 913 F. Supp. 1031, 1043 (N.D. Ohio 1996); *accord Champion Contracting Const. Co. Inc. v. Valley City Post*, No. 03CA0092–M, 2004 WL 1459298, at *6 (Ohio Ct. App. 9th Dist. June 30, 2004) ("The doctrine of unjust enrichment, however, is 'inapplicable if an express agreement existed concerning the services for which compensation is sought; the parameters of the agreement limit the parties' recovery in the absence of bad faith, fraud or illegality.'") (quoting *Pawlus v. Bartrug*, 673 N.E.2d 188, 191 (Ohio Ct. App. 9th Dist. 1996)).

Although the existence of an express contract that governs the same subject matter bars an unjust enrichment claim, "where the existence of a contract is in dispute, [an] unjust enrichment claim may be pled in the alternative to a breach of contract claim." *Right-Now Recycling, Inc. v. Ford*

*Motor Credit Co.*, No. 1:11-cv-364, 2014 U.S. Dist. LEXIS 182828, at *61 (S.D. Ohio Oct. 1, 2014). However, even at the motion to dismiss stage, if the existence of the contract is not in dispute, courts routinely dismiss unjust enrichment claims as precluded by the contract. *See, e.g.*, *Pinkerton v. Gov't Employees Ins. Co.*, No. 5:18-CV-1371, 2019 WL 1026227, at *7 (N.D. Ohio Mar. 4, 2019) ("In this case, no party disputes the existence of the underlying insurance contract governing the issues in this case.  Because there is no question that an express written contract exists between Pinkerton and defendants covering the disputed UIM coverage, Ohio law precludes a claim for unjust enrichment."); *N. Cent. Elec. Coop., Inc. v. Linde, LLC*, No. 3:16-CV-1890, 2019 WL 460485, at *4 (N.D. Ohio Feb. 6, 2019) ("Because the parties do not dispute the existence of a contract, but only whether that contract was breached, North Central's unjust enrichment claim may not proceed."); *Amarado Oil Co. v. Davis*, No. 5:12CV627, 2013 WL 5234440, at *12 (N.D. Ohio Sept. 17, 2013) ("In sum, because Amarado agrees that a contract exists and has not pleaded a viable fraud in the inducement claim, Count 3 is dismissed.").

In the instant matter, Rosendin does not challenge the validity or enforceability of the Subcontract on which APA relies for its breach of contract claim. (Doc. No. 57 at 8; *see also* Doc. No. 48 at ¶¶ 13, 40.)  Rather, Rosendin merely asserts it is not in breach of the Subcontract. (Doc. No. 57 at 10.)  Thus, the existence of the Subcontract is not in dispute, and, under Ohio law, any claims for unjust enrichment based on the same matters governed by the Subcontract are barred. While APA argues that this determination is premature because it is entitled to plead claims in the alternative pursuant to Rule 8(d)(2) (Doc. No. 53 at 9-11), that argument goes against the weight of authority finding that dismissal is warranted even at the motion to dismiss stage when the existence of the contract is not in dispute.

APA also contends that dismissal of its unjust enrichment claim is inappropriate because its unjust enrichment claim encompasses additional work that APA performed beyond the scope of work of the Subcontract.  (Doc. No. 53 at 11.)  However, the Subcontract specifically provides for the eventuality that Rosendin may request APA to perform work that is outside the original scope of the Subcontract.  For example, Section 6, entitled "CHANGES IN WORK," specifically states, "Payment for changed work shall be made in accordance with Section 4, above."  (Doc. No. 45-1 at 3.)  In addition, Section 7 of the Subcontract, entitled "CLAIMS," provides:

> If any dispute shall arise between Contractor and Subcontractor regarding performance of the Subcontractor's work, or any alleged change in the Subcontractor's work, Subcontractor shall timely perform the disputed work and shall: (i) give written notice of a claim for additional compensation for the work prior to commencement of the disputed work, and (ii) comply with the notice and claim requirements of the Contract Documents.

(*Id.* at 4.)  Thus, there are specific provisions in the Subcontract that address how APA should be compensated for doing the type of additional work on which APA's unjust enrichment claim is based.  Consequently, APA's unjust enrichment claim is precluded by the existence of the Subcontract, as the Subcontract governs all of the issues for which APA is attempting to assert its unjust enrichment claim.  *See Champion Contracting*, 2004 WL 1459298, at *6 ("Because the written contract expressly covered the 'additional work' completed by Champion, we find that the trial court did not err when it concluded that a claim for unjust enrichment could not lie based on the existence of an express contract.").  Therefore, Rosendin's Partial Motion to Dismiss is also granted with respect to APA's unjust enrichment claim.

### IV. NextEra Defendants' Motion to Dismiss

#### a. Action on Account, Reformation of Contract Due to Mutual Mistake of Fact, and Breach of Contract

Based on the Subcontract, APA sets forth claims for breach of contract, action on account, and reformation of contract due to mutual mistake of fact against the NextEra Defendants. (Doc. No. 45 at ¶¶ 26-50.) The NextEra Defendants assert each of these claims should be dismissed because they are not parties to the Subcontract, and any claims against them based on the Subcontract fail due to a lack of privity. (Doc. No. 49-2 at 6-10.) APA disputes this conclusion, and argues that the NextEra Defendants may still be held liable under the Subcontract because they are third-party beneficiaries of the Subcontract. (Doc. No. 54 at 5-8.) The Court finds that the NextEra Defendants may not be held liable as third-party beneficiaries under these circumstances.

Under Ohio law, "[t]he party alleging breach of contract must show: (1) the existence of a binding contract or agreement; (2) the non-breaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages as a result of the breach." *Sobh v. Am. Family Ins. Co.*, 755 F. Supp. 2d 852, 855 (N.D. Ohio 2010). Relatedly, an action on account "is 'founded upon contract and thus a plaintiff must prove the necessary elements of a contract action, and, in addition, must prove that the contract involves a transaction that usually forms the subject of a book account.'" *Arthur v. Parenteau*, 657 N.E.2d 284, 285 (Ohio Ct. App. 3d Dist. 1995) (quoting *Gabriele v. Reagan*, 566 N.E.2d 684, 687 (Ohio Ct. App. 12th Dist. 1988)).

To establish the first element of a breach of contract claim, "the parties must be in privity—without privity, Ohio does not recognize, and has no remedy for, a contract action." *Sobh*, 755 F. Supp. 2d at 855. In other words, "a contract is only binding on those who are parties to it." *Id.* In

14

addition, "courts have long recognized that, without something more, a landowner and subcontractor are not in privity of contract."  *Booher Carpet Sales, Inc. v. Erickson*, No. 98-CA-0007, 1998 WL 677159, at *5 (Ohio Ct. App. 2d Dist. Oct. 2, 1998).

In this case, APA concedes that the NextEra Defendants are not signatories to the Subcontract between Rosendin and APA, but asserts that the NextEra Defendants may be held liable for Rosendin's breaches of the Subcontract as intended third-party beneficiaries.  (Doc. No. 54 at 5-8.) This argument was recently considered in *Three–C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 81 N.E.3d 499 (Ohio Ct. App. 10th Dist. 2017).  There, the plaintiff similarly argued that it could sue the defendant for damages because the defendant was a third-party beneficiary of a contract between the plaintiff and the defendant's insured.  *Id.* at 504.  In assessing this argument, the court noted that the Supreme Court of Ohio has adopted the definition of a third-party beneficiary from Section 302 of the Restatement of the Law 2d, Contracts (1981).  *Id.*  From this, the court concluded:

> As the language of the Restatement makes clear, the third-party beneficiary doctrine concerns a beneficiary's "right to performance."  It recognizes that a right of the third-party beneficiary to sue for performance may exist, but only if the parties clearly intended the beneficiary to benefit from the performance of the contract.  However, there is no mention of the third-party beneficiary having liability to either the promisor or promisee, only a "duty to him" owed by the contracting parties.  *Id.* at Comment e. Thus, as articulated in the third-party beneficiary doctrine adopted by the Supreme Court, we discern no basis for imposing liability on an intended third-party beneficiary.

*Id.* As a result, under Ohio law, there is no basis for imposing liability on the NextEra Defendants even if they were third-party beneficiaries of the Subcontract.

APA cites several cases in support of its position that it may hold the NextEra Defendants liable under the Subcontract for Rosendin's breaches as third-party beneficiaries, but the Court finds

15

them unpersuasive. Three of the cases relied on by APA were specifically distinguished by the court in *Three–C Body Shops*:

> In both *Ohio Match Co.* and *Saum*, the courts imposed liability after determining that the purported third-party beneficiaries had directly accepted the benefits from a party to the agreement with acts akin to performance. In *Resource Title Agency, Inc.*, as well, the defendant "contact[ed] the Agencies directly to request services and to inquire as to the status of various real estate transactions," and had transacted directly with the plaintiffs in previous contracts. *Id.* at 768. None of these cases provides a reasoned foundation for extending contractual liability to intended third-party beneficiaries.

*Id.* at 505-06. These cases also do not support imposing contractual liability on the NextEra Defendants under the circumstances presented here. Except for generally stating that the NextEra Defendants accepted the benefits of the Subcontract, APA has not pointed to any additional allegations similar to the facts at issue in those cases that would support the imposition of liability.[3] As the court noted in *Three–C Body Shops*, APA's argument "would result in an unwarranted extension of the law that would expose non-contracting parties to possible liability." *Id.* at 506.

In addition, the remainder of the cases relied on by APA in support of imposing contractual liability on a third-party beneficiary are immaterial. Each simply stands for the general proposition that an intended third-party beneficiary cannot receive a greater benefit than that provided for in the contract, and, thus, beneficiaries may be forced to abide by certain provisions of the contract when enforcing the contract or receiving benefits thereunder, such as an arbitration provision. *See Cleveland-Akron-Canton Advert. Coop. v. Physician's Weight Loss Centers of Am., Inc.*, 922 N.E.2d

---

[3] APA argues that under the Subcontract, APA assumed direct responsibilities toward the NextEra Defendants. (Doc. No. 54 at 7-8.) But, as the NextEra Defendants correctly point out, the provision relied upon by APA for its argument does not impose a duty on APA to the NextEra Defendants. (Doc. No. 58 at 7-8.) Instead, that provision further defines the duties that APA has to Rosendin. (*See* Doc. No. 45-1 at 1 ("*Subcontractor agrees to be bound to Contractor* in the same manner and to the same extent as Contractor is bound to the Owner under the Contract Documents, including, but not limited to, all applicable terms and provisions thereof.") (emphasis added).)

16

1012, 1017 (Ohio Ct. App. 8th Dist. 2009); *QualChoice, Inc. v. Bhd. Ins. Co.*, No. 06CA00020, 2007 WL 152618, at *3-4 (Ohio Ct. App. 5th Dist. Jan. 22, 2007); *Thatcher v. Sowards*, No. 98CA2613, 2000 WL 310239, at *2-3 (Ohio Ct. App. 4th Dist. Mar. 22, 2000); *Fawn v. Heritage Mut. Ins. Co.*, No. 96APE12-1678, 1997 WL 359322, at *2 (Ohio Ct. App. 10th Dist. June 30, 1997).

Thus, APA has failed to state a claim for breach of contract, reformation of contract, and action on account—all of which are based on the Subcontract—against the NextEra Defendants.

### b. Unjust Enrichment

Finally, the NextEra Defendants assert that APA's unjust enrichment claim against them cannot survive because a subcontractor may not assert an unjust enrichment claim against a property owner when the possibility exists that the subcontractor may also recover from the contractor. (Doc. No. 49-2 at 13-15.) APA argues dismissal on this basis is premature at this time. (Doc. No. 54 at 12-14.) The Court concludes that dismissal is warranted.

In Ohio, "[a] subcontractor may not assert an unjust-enrichment claim against a property owner if the possibility exists that, for the same work or material supplied, the subcontractor can also recover from the contractor or the property owner might also have to pay the contractor." *Meridien Mktg. Grp., Inc. v. J & E Bldg. Group, Inc.*, No. 2011–CA–02, 2011 WL 4424834, at *2 (Ohio Ct. App. 2d Dist. Sept. 23, 2011). In other words, "[b]efore a subcontractor can pursue an unjust enrichment claim against a property owner, it must establish that the general contractor is 'unavailable for judgment and unable to pursue the owner for the money that the subcontractor is seeking.'" *BFI Waste Sys. of Ohio, Inc. v. Prof'l Constr. & Safety Services, Inc.*, No. 06CA008972, 2008 WL 834428, at *2 (Ohio Ct. App. 9th Dist. Mar. 31, 2008) (quoting *Booher Carpet*, 1998 WL 677159, at *7). For example, an unjust enrichment claim against a property owner is not barred if the general

contractor has filed for bankruptcy. *Apostolos Grp., Inc. v. Josephson*, No. 20733, 2002 WL 242111, at *1 (Ohio Ct. App. 9th Dist. Feb. 20, 2002).

In this case, APA, a subcontractor, has asserted an unjust enrichment claim against the NextEra Defendants, the property owners, without alleging that the general contractor, Rosendin, is unavailable for judgment. Indeed, Rosendin remains a defendant in this case and there are no allegations that it has filed for bankruptcy or is otherwise struggling financially. Moreover, in its SAC, APA indicates that Rosendin obtained a mechanic's bond in favor of APA as security for APA's claims that APA has previously stipulated is sufficient. (Doc. No. 45 at ¶¶ 23, 54-56; Doc. No. 45-4.)

APA argues that subcontractors may look to a property owner for payment on a theory of unjust enrichment when the owner has not paid the general contractor for the aspect of the job at issue. (Doc. No. 54 at 12-13.) But that is a separate issue and does not appear relevant to the question of whether a claim is precluded based on the contractor's availability for judgment. In addition, APA does not allege in the SAC that the NextEra Defendants have not paid Rosendin for the disputed work, and the Court need not consider such a claim. The Court also disagrees with APA's argument that the case must proceed to discovery or judgment prior to dismissal on this basis. (*Id.* at 14.) APA has failed to allege Rosendin is unavailable for judgment, and, as a result, APA may not proceed with an unjust enrichment claim against the NextEra Defendants.

V. **Conclusion**

For the reasons set forth above, Rosendin's Partial Motion to Dismiss (Doc. No. 47) is GRANTED, and the NextEra Defendants' Motion to Dismiss (Doc. No. 49) is GRANTED.

**IT IS SO ORDERED.**

|  |  |
|---|---|
| Date: May 18, 2020 | *s/Pamela A. Barker*<br>PAMELA A. BARKER<br>U. S. DISTRICT JUDGE |